UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re Chen Foundation, Inc.,                           Chapter 11

                                                       Case No.: 24-10438 (JPM)

                                        Debtor.

-------------------------------------------------------------x

**Memorandum Opinion and Order on Motion to Determine Debtor's SARE Status**

*A P P E A R A N C E S :*

**JACOBS P.C.**
*Proposed Counsel for Chen Foundation, Inc.*
595 Madison Avenue, 39th Floor
New York, New York 10022
By:     Leo Jacobs, Esq.
        Robert M. Sasloff, Esq.

**COZEN O'CONNOR**
*Counsel for Shanghai Commercial Bank Ltd., New York Branch*
*Counsel for The Shanghai Commercial & Savings Bank, Ltd.*
123 N Wacker Drive, Ste. 1800
Chicago, Illinois 60606
By:     Peter J. Roberts
        Christina M. Sanfelippo

**COZEN O'CONNOR**
*Counsel for Shanghai Commercial Bank Ltd., New York Branch*
*Counsel for The Shanghai Commercial & Savings Bank, Ltd.*
3WTC, 175 Greenwich Street, 55th Floor
New York, New York
By:     Frederick E. Schmidt, Jr.

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**[1]

Before the Court is the *Motion to Determine Debtor's SARE Status* (the "Motion") filed by Shanghai Commercial Bank Ltd., New York Branch ("SCB"), and The Shanghai Commercial & Savings Bank, Ltd. ("SCSB", and collectively with SCB, the "Lenders"). [Doc. 24]. The Motion seeks a determination as to whether the Debtor is a single asset real estate ("SARE") debtor within the meaning of Section 101(51B) of the Bankruptcy Code. *See* [Doc. 24, p. 1].

In response to the Motion is the *Debtor's Opposition to Motion to Determine Debtor's SARE Status* (the "Objection") filed by Chen Foundation, Inc. (the "Debtor"). [Doc. 34]. The Objection argues generally that the Debtor is not a SARE debtor because it "presently operates with affiliated parties an art gallery on the fifth floor of [its] Property." [Doc. 34, p. 1–2].

After careful consideration, and for the reasons set forth below, the Court finds that the Debtor is not a SARE debtor within the meaning of 11 U.S.C. § 101(51B). Accordingly, the Motion is DENIED.

## I.    BACKGROUND

The Debtor is a corporation formed in 1996 under the laws of Nevada. [Doc. 11, p. 1]. As relevant here, the Debtor's primary asset is real property located at 250 Lafayette Street, New York, New York (the "Property"). [Doc. 1, p. 1]. The Property is presently subject to a lien in favor of the Lenders. *See* Claim no. 4-1. The following facts regarding the Property are undisputed:

---

[1]    Unless otherwise specified, references to "[Doc. __]" are to filings entered on the docket are to filings entered in the bankruptcy case *In re: Chen Foundation Inc.*, Case No. 24-10438 (March 18, 2024).

References to "Bankruptcy Rule __" are to the Federal Rules of Bankruptcy Procedure. References to "Local Rule __" are to the Local Bankruptcy Rules for the Southern District of New York.

(i)     the Property was first purchased in 1994 for the purpose of displaying and selling the artwork of T.F. Chen,[2] *see* [Doc. 34, pp. 1–2] (describing T.F. Chen as the "patriarch of the Chen family" and "a world-renowned artist"); [Doc. 37, p. 3];

(ii)    the Property operated for several years entirely as a "Cultural Center and Art Gallery" by non-Debtor entities (the "Non-Debtor Affiliates") that are themselves owned and operated by the Debtor's principals,[3] *see* [Doc. 34, pp. 1–2]; [Doc. 37, p. 3];

(iii)   in 2001, the Debtor converted certain floors of the Property to commercial rental space because "revenues from the art gallery could no longer support the operating expenses of the entire building," *see* [Doc. 38, p.2]; [Doc. 37, p. 4];

(iv)    notwithstanding the Property's conversion, the art gallery and cultural center has continually operated on various floors of the Property that were not leased out as a commercial rental space, *see* [Doc. 34, p. 2]; [Doc. 37, p. 4];

(v)     although the art gallery continues to display and market the artwork of T.F. Chen, the Debtor's predominant source of income has for several years been the revenue derived from its commercial leases, *see* [Doc. 34, pp. 2–4] (noting that "[u]nfortunately, [] T.F. Chen artwork has not sold in many years in the United States"); [Doc. 37, p. 2].

---

[2]     Submitted in support of the Objection is the *Declaration of Ted Chen in Support of the Debtor's Opposition to Motion to Determine Debtor's SARE Status*, which provides:

> Debtor has [] since the acquisition of the Property hosted events on behalf of the cultural center and art gallery, held pop up events and conducted multiple special showings of the artwork of TF Chen, the patriarch of the Chen Family, who is a world-renowned artist.  Debtor operated both in partnership with affiliated parties, the New World Art Center, and the T.F. Chen Cultural Center. New World Art Center was formed in 1995 and T.F. Chen Cultural Center in 1997, essentially for tax purposes and because they had operated elsewhere outside of the United States.  The home of each though is the Property and, in conjunction with the Debtor, they have operated the Property in furtherance of their stated goal of global peace, love and unity and to promote art education and run a public art program. Dr TF Chen is the first artist-painter to be honored with a Global Tolerance Award from the Friends of the United Nations (2001).  Dr TF Chen is also the initiator for "Arts for Humanity World Tour" (2005-2015) to advance Art Education and a Global Culture of Peace.

[Doc. 34-1, p. 2].

[3]     The Debtor and its Non-Debtor Affiliates, New World Art Center and T.F. Chen Cultural Center, are owned by T.F. Chen, Julie Chen, Lucia Chen, and Ted Chen.  [Doc. 34-1, p. 4]; [Doc. 32].

The Debtor filed a petition for chapter 11 relief on March 18, 2024. *See generally* [Doc. 1]. Although the Property is the Debtor's primary asset, the Debtor's petition did not designate this proceeding as a SARE proceeding. *See id.*

The Lenders filed the instant Motion on May 9, 2024, arguing that "[t]he Debtor is subject to the SARE Provisions [of the Bankruptcy Code] . . . [because] the Property generates substantially all of the Debtor's gross income, and the Debtor operates no substantial business other than the management and leasing of the Property." *See* [Doc. 24, pp. 3–4]. The Debtor filed its Objection on May 24, 2024, maintaining that "the Debtor is not a SARE [Debtor] as defined under the Bankruptcy Code, because since its inception and opening of the Property in 1996, the Debtor has always operated a cultural center and art gallery for the display of the artwork of T.F. Chen." [Doc. 34, pp. 1, 5] (noting further that "[t]he Debtor purchased the Property in 1994 and renovated the [] building to be operated as a Cultural Center and Art Gallery when it opened in 1996"). The Lenders filed a reply on May 28, 2024. *See generally* [Doc 37].

**ANALYSIS**

## II.    SINGLE ASSET REAL ESTATE

### a.    Section 101(51B)

Under title 11 of the Bankruptcy Code, a SARE designation allows certain secured creditors relief from the automatic stay unless, within a specific period of time, "(A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or (B) the debtor has commenced monthly payments [to creditors]." 11 U.S.C. § 362(d)(3); *see also In re Nuovo Ciao-Di, LLC,* 650 B.R. 785, 788 (Bankr. S.D.N.Y. 2023) (noting that the Bankruptcy Code's SARE provisions "create[ed] an expedited process for 'single asset real estate' cases"). A SARE property is defined in Section 101(51B) of the Bankruptcy Code as:

3

real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor . . . and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

11 U.S.C § 101(51B).  Accordingly, to qualify as a SARE property, a debtor must engage in only: (i) the "business of operating [] real property;" and (ii) other activities incidental to that business. *Id.*

"Incidental activities" are those that are "intrinsic to owning and developing the real estate." *In re Vargas Realty Enterprises Inc.*, No. 09-10402 (SMB), 2009 WL 2929258, at *4 (Bankr. S.D.N.Y. July 23, 2009) (quoting *In re Kara Homes,* Inc., 363 B.R. 399, 406 (Bankr. D.N.J. 2007) (concluding that incidental activities are what "a reasonable and prudent business person would expect to generate substantial revenues from")); *see also In re Club Golf Partners, L.P.*, No. 07-40096-BTR-11, 2007 WL 1176010, at *5 (E.D. Tex. Feb. 15, 2007) (noting that the income generated through incidental activities must be passive).

It is well-established that "incidental activities" include, *inter alia*, the lease and maintenance of rental property.  *See In re Vargas Realty Enterprises Inc.*, No. 09-10402(SMB), 2009 WL 2929258, at *4.  In *In re Vargas Realty Enterprises Inc.*, for example, the debtors owned an apartment building.  *Id.* at *1.  In addition to leasing the building, the debtors managed all property repairs and improvements, and made repairs aimed solely at increasing the building's rental income.  *Id*.  The court ruled that such maintenance was "intrinsic to owning and developing the real estate" and, therefore, incidental.  *Id*. (citing *Kara Homes*, 363 B.R. at 406).

In contrast, a property is not a SARE property if it provides goods or services unrelated to the mere ownership of real estate.  *See, e.g.*, *id*. (discussing *In re Club Golf Partners, L.P.*, No. 07-40096-BTR-11, 2007 WL 1176010, at *3 (E.D. Tex. Feb. 15, 2007) (finding that a golf course was

4

not a SARE property because of additional amenities not intrinsic to its ownership)); *see also In re Prairie Hills Golf & Ski Club, Inc.*, 255 B.R. 228, 230 (Bankr. D. Neb. 2000) (concluding that a golf and ski club was not a SARE property because it "involve[s] [] other significant income-producing activities"); *In re Larry Goodwin Golf, Inc.*, 219 B.R. 391, 393 (Bankr. M.D.N.C. 1997) (holding that a debtor is not a SARE debtor because it "operates a golf course with associated golf car rentals, a pool, provides concessions, and owns [] land [] for sale"); *In re CBJ Dev., Inc.*, 202 B.R. 467, 472–473 (B.A.P. 9th Cir. 1996) ("[T]he [Debtor's] gift shop, restaurant, bar, and [] bus tours . . . are all business other than the business of operating the property."); *In re Kkemko, Inc.*, 181 B.R. 47, 51 (Bankr. S.D. Ohio 1995) (holding that the marina is not a SARE property because it offers services "more than simply rental of moorings"); *In re Scotia Pac. Co., LLC*, 508 F.3d 214, 224–25 (5th Cir. 2007) (finding that the timberland was not a SARE property because planting, growing, maintaining, and selling timbers makes it "more than a passive investment").

Here, the presence of the cultural center and art gallery on the Property push the Debtor outside the purview of 11 U.S.C § 101(51B).  First, the Debtor did not purchase the Property as a commercial rental space in 1994.[4]  [Doc. 34, p. 1–2].  The Property has contained a cultural center

---

[4]        The Ninth Circuit has interpreted Section 101(51B) to limit a property's SARE status to the property's *current* condition, regardless of the owner's intent when purchasing the property.  *In re CBJ Dev., Inc.*, 202 B.R. 467, 473 (B.A.P. 9th Cir. 1996).  In *CBJ*, that court found that the language of Section 101(51B)—namely, "is being conducted"—suggests that only current activities should be considered when assessing whether a debtor is involved in substantial business activities beyond the operation of the property.  *Id.* (noting that "any other conclusion would allow all debtors with unrented commercial space to evade § 362(d)(3) by simply declaring an intention to start a business").

        *CBJ* thus stands for the straightforward proposition that SARE status depends on the current business activities of a given debtor.  The Ninth Circuit did not, however, hold that the present *success* of those activities is dispositive.  Moreover, because the movant bears the burden of proving that a given property is a SARE property, *see In re 218 Jackson LLC*, 2021 WL 3669371, at *3 (citing *In re TTM MB Park, LLC*, 2012 WL 844499, at *1 (Bankr. S.D. Ala. Mar. 12, 2012)), the burden is on the Lenders, not the Debtors, to prove that the Property is not presently being used for "substantial business activities other than the operation of the [P]roperty."  *CBJ*, 202 B.R. at 473.  Simply put—and although the Property generated exclusively rental income in 2021, *see* [Doc. 24, p. 2]—the Lenders have proffered no evidence suggesting that the cultural center and art gallery are not actively marketing the works of T.F. Chen.  *See generally* [Doc. 24]; [Doc. 34]; *see also In re Pioneer Austin E. Dev. I, Ltd.*, 2010 WL 2671732, at *2 (Bankr. N.D. Tex. July 1, 2010) ("The [SARE] inquiry distinguishes between entrepreneurial, active

and art gallery since 1996, and portions of the Property were not converted into commercial rental spaces until 2000.  *Id.*  These activities are clearly not "intrinsic to owning and developing" the Property.  *C.f.*, *Vargas*, No. 09-10402(SMB), 2009 WL 2929258, at *4 ("[E]ach debtor owns a building that leases apartments to tenants . . . [and] [t]he contracting, managing and leasing services that the debtors identified do not generate income except through the payment of increased rent, and [] are [therefore] incidental to the operation of the Properties.").

Similarly, the sale of art is an enterprise that "a reasonable and prudent business person would expect to generate substantial revenues from."  *Kara Homes*, 363 B.R. at 406.  It is undisputed that the Debtor has regularly "held pop up events and conducted [] special showings of [] artwork" at the Property since its acquisition.  [Doc. 34, p. 2–3] (noting that "officers of the Lenders were invited to gallery events at the Property and [had] regular visits to the Property").  Although T.F. Chen's art has apparently not sold for some time, art sales have constituted at least some of the Debtor's past income, and was in fact the Debtor's *sole* source of income prior to 2001.  [Doc. 34, p. 4].

Finally, although the cultural center and art gallery are to some degree operated by the Non-Debtor Affiliates, those entities were "formed [solely] for tax purposes and to operate the art gallery and cultural center *in partnership* [] *with the Debtor . . . .*"  [Doc. 34-1, p. 4] (emphasis added); *see also* [Doc. 34, p. 4–5].  Indeed, both Non-Debtor Affiliates are owned by the same principals as the Debtor,[5] and—notwithstanding their use of significant portions of the Property—

---

labor and efforts versus merely passive investment income."); [Doc. 34-1, p. 2] (noting that the "[s]ince the Covid pandemic, the Debtor operated the gallery on the 2nd and 4th floors when it [] lost certain of its commercial tenants").

[5]    As noted above, all three entities are owned by T.F. Chen, Julia Chen, Lucia Chen, and Ted Chen.  [Doc. 34-1, p. 4]; [Doc. 32].

neither entity pays the Debtor rent.  [Doc. 34-1, pp. 3–4]; [Doc. 34, p. 4–5]; [Doc. 32].  The Debtor

and its Non-Debtor Affiliates are thus engaged in a joint commercial enterprise that operates at the

direction of the same owners in pursuit of the same end: the sale of art.[6]  *See* [Doc. 34, p. 2–3] (the

Debtor has "held pop up events and conducted multiple special showings of [T.F. Chen's]

artwork"); *see also* [Doc. 34-1, pp. 3–4] (noting that T.F. Chen regularly "uses the space[] at [the

Property] for his studio for painting").

---

[6]       The Lenders rely upon *In re JJMM Int'l Corp.*, 467 B.R. 275 (Bankr. E.D.N.Y. 2012) for the proposition that "to the extent that the Non-Debtor Affiliates operate the Art Gallery, their activities cannot be imputed to the Debtor for SARE purposes."  [Doc. 37, p. 3].  The Court disagrees.

In *JJMM*, a bankruptcy court in the Eastern District of New York considered a debtor that derived "substantially all its gross income from leasing [its] Property to [] two [affiliated] non-debtor [l]essees."  467 B.R. at 277. Although the debtor's lessees "operate[d] an Asian restaurant and takeout . . . [and] an academic preparatory school," the debtor had "conceded at the Hearing that [the debtor] [wa]s not engaged in substantial business other than passively owning and leasing the Property and activities incident thereto."  *Id.* at pp. 277, 278 n.6 (finding that the debtor's "common plan . . . [for] its Property is essentially to serve as landlord to [the its affiliated lessees], the two entities that actually operate [the principal's] business").

Here, though they share principals with the Debtor, the Non-Debtor Affiliates are not lessees—the Non-Debtor Affiliates have never paid the Debtor rent. *See generally* [Doc. 34]; [Doc. 34-1]; *see also In re Club Golf Partners, L.P.,* 2007 WL 1176010, at *6 (E.D. Tex. Feb. 15, 2007) ("Because its business activities are variegated and multiple . . . and because it does not simply lease its property to tenants . . . the Debtor's golf course does not fall within the scope of the definition of 'single asset real estate' in Code § 101(51B) . . . ."); *cf. JJMM*, 467 B.R. at 278 ("[The] Debtor is engaged in *no other substantial activity* other than leasing the Property to two tenants that appear to be wholly owned by Debtor's principal . . . .") (emphasis added).  Moreover, it undisputed that while the Non-Debtor Affiliates have, to some extent, controlled the art gallery and cultural center, the sale of art has generated revenue *for the Debtor*, even after the creation of its Non-Debtor Affiliates.  *See* [Doc. 34-1, p. 2] (noting that "New World Art Center was formed in 1995 and T.F. Chen Cultural Center in 1997") (emphasis added); *id.* at p. 4 ("In the past . . . the only income the Debtor derived was related to the gallery and cultural center . . . [and] [t]he Debtor [has] paid for [the] expenses of the [Non-Debtor Affiliates] since the [Property's] opening.").  Given that their relationship amounts to more than the passive collection of rent, it appears the Non-Debtor Affiliates have operated as an extension of the Debtor rather than a distinct enterprise.  Put differently, the Debtor has actively participated in (and benefited from) the operation of the art gallery and cultural center.  A fair reading of the record thus indicates that the Property has continuously been operated both "*by the Debtor* and its [Non-Debtor Affiliates] as a gallery . . . since [the] inception and opening of the Property in 1996 . . . ."  [Doc. 34-1, p. 5] (emphasis added).  For these reasons, the Court finds *JJMM* distinguishable.

7

## CONCLUSION

In conclusion, the Court finds that this bankruptcy proceeding falls outside the purview of

11 U.S.C § 101(51B). Accordingly, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated: July 17, 2024
New York, New York

/S/ John P. Mastando III
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE